MICHELE HADDAD,

       Plaintiff,

vs.                           CASE NO. 3:10-cv-414-J-34TEM

ELIZABETH DUDEK, in her official capacity
as Interim Secretary, Florida Agency for
Health Care Administration, and

DR. ANNA VIAMONTE ROSS, in her
official capacity as Secretary, Florida
Department of Health,

       Defendants.

_____

## REPORT AND RECOMMENDATION[1]

    This matter has been referred to the undersigned for issuance of a Report and

Recommendation regarding appropriate resolution of Plaintiff's Motion for Attorney's Fees

and Litigation Expenses (Doc. #74), filed July 6, 2011.  For the reasons stated herein, it

is respectfully **RECOMMENDED** that Plaintiff's motion be **GRANTED**.

## I. Background

    Plaintiff is a 49-year-old quadriplegic as a result of a motorcycle accident caused

by an intoxicated driver in September 2007.  *See* Doc. #2-1 "Haddad Dec." at 1.  Plaintiff

uses a motorized wheelchair for mobility and is completely dependent on others to help

her perform activities of daily living, including dressing, bathing, toileting, and eating.  *See*

Doc. #2-2 "Johns Dec." at 4; Haddad Dec. at 3.  Plaintiff requires 10-12 hours of in-home

_____

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); and, Local Rule 6.02(a), United States District Court for the Middle District of Florida.

assistance to remain in the community.  *See* Johns Dec. at 5.  Despite her dependence on care from others, Plaintiff has maintained an active life in the community.  *See* Haddad Dec. at 4; Johns Dec. at 5.  She attends church, goes to the movies, visits friends, goes shopping, and exercises at Brooks Rehabilitation Hospital's gymnasium.  *Id.*  Plaintiff and her husband divorced in November 2009, and he ceased providing care for Plaintiff in March 2010.  *See* Haddad Dec. at 3; Johns Dec. at 5.  At that time, Plaintiff's adult son temporarily moved home from Miami in order to care for Plaintiff.  *Id.*  Plaintiff's son was unable to provide care services to Plaintiff indefinitely and intended to return to his responsibilities in Miami.  *See* Haddad Dec. at 4; Johns Dec. at 5.  Absent other assistance, Plaintiff would be forced to leave the community and enter a nursing home in order to receive the care she requires.  *See* Haddad Dec. at 4-5; Johns Dec. at 5.

Defendants administer Florida's in-home services waiver programs, including the Traumatic Injury/Spinal Cord Injury Waiver ("TBI/SCI Waiver") program.  *See* Doc. #24-1 "Kidder Aff." at 1-2; Doc. #26-1 "Hudson Aff." at 1-3.  Through this program, the state delivers in-home services to Medicaid eligible persons with traumatic brain or spinal cord injuries so that they can remain in the community.  *See* Doc. #25-1 *"*Russell Aff. II" at 1-2.

Plaintiff's income is limited to her Social Security Disability Insurance, and she is eligible for, and receives, Medicare and Medicaid.  Plaintiff applied to receive services under Defendants' TBI/SCI Waiver program in November 2007.  *See* Haddad Dec. at 2–3; Johns Dec. at 5.  Plaintiff was eligible for the TBI/SCI Waiver program and was placed on the waiting list where she remained for approximately two-and-a-half years.[2]  See Haddad

---

[2] Priority of placement on the TBI/SCI Waiver waiting list is based on the probability, given the individual's level of community support and severity of needs, that but for the TBI/SCI Waiver, the individual would be institutionalized.  Because movement on the waiting list is based on an individual's needs, the wait time can vary greatly from person to person.  *See* Russell Aff. II at 2.

Dec. at 3-5. With her other sources of in-home assistance withdrawing, Plaintiff faced the risk of institutionalization without in-home services through Defendants' TBI/SCI Waiver program. *See* Haddad Dec. at 5; Johns Dec. at 5. Plaintiff contacted Defendants in early March 2010 to notify them of the change in her circumstances and that she desperately required in-home services. *See* Haddad Dec. at 4. Defendants informed Plaintiff in April 2010 that there were no funds available for in-home services, but if she moved into a nursing home, after sixty days she would be eligible to receive in-home services through the Florida Nursing Home Transition Plan (the "Transition Plan").[3] *Id.* Plaintiff sought injunctive relief requiring Defendants to provide her with in-home services without first subjecting herself to institutionalization. (Doc. #2).

Plaintiff filed a complaint (Doc. #1) and a motion for preliminary injunction (Doc. #2) on May 13, 2010. Defendants filed a motion to dismiss Plaintiff's complaint on June 8, 2010 (Doc. #32) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

The District Court granted Plaintiff's motion for a preliminary injunction on June 23, 2010 (Docs. #46, 49).[4] The Court determined Plaintiff made a clear showing that she had a significant and substantial likelihood of succeeding on the merits of her claim, that

---

[3] Nursing home care is a mandatory service under Medicaid and if Plaintiff is required to enter a nursing facility, Defendants would have to pay for such care irrespective of budgetary constraints. It costs less for Defendants to administer in-home services than it does for them to pay for nursing home care. However, because of Defendants' budget structure, Defendants would require Plaintiff to enter a nursing home, where funding comes from the state's nursing home line item which the state is required to pay. After at least sixty days, Plaintiff would then be eligible for the in-home services she required from the TBI/SCI Waiver through the Transition Plan. *See* Doc. #49 at 12-13.

[4] The Court determined the urgency of the circumstances required the issuance of an order resolving the motion without a delay solely to complete the preparation of a written opinion. Thus, the Court granted the motion with the intention of providing an opinion setting forth its reasoning at a later date. Doc. #46, filed June 23, 2010, contains the order granting preliminary injunctive relief, and Doc. #49, filed July 9, 2010, contains the Court's reasoned opinion.

Defendants' refusal to provide her with in-home based health care services for which she was financially and medically eligible, and which Defendants provided to others through the TBI/SCI Medicaid waiver programs, violated the ADA; that Plaintiff would suffer irreparable injury unless the injunction was issued in that she was at imminent risk of being institutionalized in order to obtain the necessary services which Defendants refused to provide her outside the institutional setting; that the threatened injury to Plaintiff outweighed the possible injury that the limited injunction would cause to Defendants; and that the injunction would not disserve the public interest. (Doc. #49 at 38). The Court ordered Defendants to immediately re-assess Plaintiff's eligibility and placement on the waiting list for services under the TBI/SCI Waiver program. (Doc. #46 at 9). In the event that reassessment resulted in a decision that services were to be denied, the Court enjoined Defendants from refusing to provide Plaintiff services consistent with those authorized under the TBI/SCI Waiver program. *Id.*

On August 5, 2010, Defendants submitted a Notice of Filing Affidavit of Kristen Russell (Doc. #56) in compliance with the Court's Order Granting Preliminary Injunctive Relief. Kristen Russell is employed by the Florida Department of Health as the Medicaid Waiver Administrator for the TBI/SCI Waiver program. (Doc. #56-1 at 1). In her affidavit, Russell stated she is responsible for enrolling and disenrolling recipients in the TBI/SCI Waiver program. (Doc. #64-1 at 1). Pursuant to the Court's order, Plaintiff was assessed on June 24, 2010. *Id.* at 2. She received a prioritization score of 83, which placed her 89th on the waiting list. *Id.* Because there were no services consistent with those that would be authorized under the TBI/SCI Waiver program, the only way Defendants could comply with the Court's order was to immediately place Plaintiff in the program, thus moving her

ahead of the 88 individuals with higher prioritization scores. *Id.* Plaintiff was placed in the TBI/SCI Waiver program on July 29, 2010. *Id.*

On March 16, 2011 the Court denied Defendants' motion to dismiss the complaint. (Doc. #63). In its order, the Court noted Plaintiff was enrolled in the TBI/SCI Waiver Program despite the fact that her prioritization score only placed her 89th on the waiting list, and the parties had submitted no further report regarding Plaintiff's status. In a footnote, the Court then stated,

> Despite the fact that Plaintiff is currently assigned to the TBI/SCI Waiver Program, her claims are not moot. Defendants assert that plaintiff's "prioritization score" does not entitle her to placement in the program, and that the "only way" Defendants could comply with the Court's 6/23/10 Order granting a preliminary injunction was to "immediately place Ms. Haddad in the TBI/SCI Waiver Program, despite her technical ineligibility." Russell Aff. ¶¶ 4, 5. Thus, Plaintiff's injury is "capable of repetition." *Olmstead*, 527 U.S. at 594 n. 6.

(Doc. #63 at 15 n.9).

On March 25, 2011, Defendants moved to dismiss Plaintiff's complaint as moot. (Doc. #65). Defendants argued that now that Plaintiff is enrolled in the TBI/SCI Waiver program, she has an entitlement to services under the program, and she cannot be disenrolled except under narrow circumstances provided in the regulations governing the program. *Id.* at 2. Defendants averred, "Even if the Court were to dissolve its injunction today, the Defendants could not and would not disenroll the Plaintiff from the TBI/SCI Waiver for that reason." *Id.* Defendants argued Plaintiff had received all of the relief sought in her Complaint and the case was therefore moot. *Id.*

In support of the motion to dismiss, Defendants submitted an affidavit from Kristen Russell (Doc. #64), which they averred provided "assurance to the Court that they will not

disenroll Ms. Haddad if the Court's preliminary injunction is dissolved." (Doc. #65 at 5). In her affidavit, Russell stated that Plaintiff was not regarded as having a different status from other TBI/SCI Waiver program recipients because she was enrolled as the result of a court order. (Doc. #64-1 at 2). Russell stated she does not have the authority to disenroll recipients from the TBI/SCI Waiver program at her discretion. *Id.* Rather, Russell is bound by Florida Administrative Code Rule 59G-13.080(6)(i), which permits her to disenroll a recipient only if her or she (1) does not follow a recommended plan of care, as evidenced by: not keeping two consecutive appointments, or demonstrating multiple failures to avail themselves of offered services; or (2) demonstrates behavior that is disruptive, unruly, abusive or uncooperative to the extent that their participation in the program seriously impairs the provider's ability to furnish services to the participant or other participants. *Id.* Even if a recipient engages in these behaviors, she must receive at least one verbal and at least one written warning prior to disenrollment. *Id.* Russell stated she would not disenroll Plaintiff on the basis of the dissolution of the Court's order granting the preliminary injunction or on the basis of the dismissal of this action. *Id.* at 3.

On April 15, 2011, the parties filed a Joint Stipulation of Dismissal with Prejudice. (Doc. #69). The parties requested "the Court reserve jurisdiction regarding Plaintiff's reasonable attorneys' fees and costs." *Id.* at 1. On April 19, 2011, the District Court issued an Order of Dismissal. (Doc. #70). The case was dismissed with prejudice, with the Court retaining jurisdiction "to determine Plaintiff's reasonable attorney's fees and costs if necessary." *Id.* at 2.

Plaintiff filed the instant Motion for Attorney's Fees and Litigation Expenses (Doc. #74) on July 6, 2011. Defendants filed a response in opposition (Doc. #76) on July 22, 2011, and Plaintiff's filed a reply (Doc. #80) on August 12, 2011. Defendants then filed a

request for oral argument (Doc. #81) on August 19, 2011. Plaintiff filed a memorandum in opposition to the request for oral argument (Doc. #82) on August 26, 2011. Defendants' reply (Doc. #85) was filed on September 2, 2011; and Plaintiff's sur-reply (Doc. #86) was filed on September 8, 2011. The Court granted Defendants' motion for oral argument (Doc. #87) on September 14, 2011. A hearing was held before the undersigned on October 3, 2011.

## II. Plaintiff's Motion for Attorneys' Fees and Litigation Expenses

Plaintiff seeks attorney's fees and litigation expenses in the amount of $83, 034.66. (Doc. #74). Plaintiff avers she prevailed in her action, brought under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. Plaintiff obtained a preliminary injunction, enjoining Defendants from denying Plaintiff appropriate community-based personal care services so Plaintiff can reside in the community instead of being forced to reside unnecessarily in a nursing home. Plaintiff argues she is entitled to attorneys' fees and litigation expenses under 42 U.S.C. §§ 12205 and 1988, because she is a prevailing party, and the rates requested, time expended, and litigation expenses incurred are all reasonable.

Defendants filed a response in opposition to Plaintiff's motion. (Doc. #76). Defendants argue Plaintiff is not a prevailing party because she voluntarily dismissed the case with prejudice, and therefore Defendants are the prevailing parties in the context of 42 U.S.C. §§ 12205 and 1988. Defendants further argue that Plaintiff failed to establish a prima facie case of entitlement to the time, hourly rates, and expenses sought.

**A. Whether Plaintiff is a prevailing party within the meaning of 42 U.S.C. §§ 12205 and 1988**

Under 42 U.S.C. § 12205, a prevailing party is entitled to reasonable attorney's fee, including litigation expenses and costs, in any action or administrative proceeding commenced pursuant to the Americans with Disabilities Act. Section 1988 authorizes the recovery of reasonable attorney's fees for a prevailing party in certain types of civil rights cases.

In order to obtain attorneys fees, the plaintiff must cross the "statutory threshold" of prevailing party status. *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 789 (1989). "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citing *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). The touchstone of the prevailing party inquiry is the "material alteration of the legal relationship of the parties." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (quoting *Sole v. Wyner*, 551 U.S. 74 (2007)). Thus, to be considered a prevailing party, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n*, 489 U.S. at 792. The Eleventh Circuit has interpreted this language to mean "(1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach,* 353 F.3d 901, 905 (11th Cir. 2003).

The central issue in the instant case is whether the preliminary injunction obtained by Plaintiff conferred prevailing party status upon her. Plaintiff argues she is a prevailing party because the preliminary injunction materially altered the legal relationship between the parties, forcing Defendants to provide her with the relief sought in her complaint. Defendants argue that Plaintiff is not a prevailing party because she voluntarily dismissed the case with prejudice prior to a final determination on the merits, dissolving the preliminary injunction and relinquishing her claim to prevailing party status.

The Eleventh Circuit has held "a preliminary injunction on the merits, as opposed to a merely temporary order which decides no substantive issues but merely maintains the status quo, entitles one to prevailing party status and an award of attorney's fees." *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987). In so deciding, the court noted, "[f]ees are awarded only when the prevailing party obtains the 'primary relief sought.'" *Id.* at 1556. In *Taylor*, the district court granted a preliminary injunction preventing the city from enforcing a discriminatory ordinance that prevented outdoor solicitation without a permit. *Id.* at 1554. The city later repealed the ordinance, at which point the parties agreed the plaintiffs' suit became moot. *Id.* The appellate court found the preliminary injunction was granted on the merits and plaintiffs had received the primary relief sought through the injunction, which was suspension of application of the permit process; thus plaintiffs were entitled to attorney's fees as a prevailing party. *Id.* at 1557, 1558. *See also ACLU of Florida v. Polk County*, No. 8:05-cv-2266-T-17TGW, 2006 WL 2147716, at *3 (M.D. Fla. July 28, 2006) ("[A] preliminary injunction that changes the status quo and creates a material alteration in the legal relationship between the parties is sufficient to make plaintiff the prevailing party.").

The Eleventh Circuit in *Common Cause/Georgia* noted *Taylor* was decided under the "central issue" standard, which was disavowed by the Supreme Court in *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 791 (1989). *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009). Nonetheless, the *Common Cause/Georgia* court found "the underlying rule that a preliminary injunction is a 'material alteration of the legal relationship of the parties' remains good law." *Common Cause/Georgia*, 554 F.3d at 1356. Accordingly, a preliminary injunction decided upon the merits may confer prevailing party status, even in the absence of a final determination on the merits. *See id.*; *Taylor*, 810 F.2d at 1557-58; *Joyce v. Potter*, No. 5:06-cv-339-Oc-10GRJ, 2007 WL 2050955, at *5 (M.D. Fla. July 16, 2007); *ACLU of Florida*, 2006 WL 2147716, at *3; *Sabina v. American General Life Insurance Co.*, 856 F.Supp. 651, 655-56 (S.D. Fla. 1992). However, a plaintiff who gains a preliminary injunction does not qualify as a prevailing party if the merits of the case are ultimately decided against her, because there is consequently no enduring change in the legal relationship of the parties. *Sole v. Wyner*, 551 U.S. 74, 86 (2007).

As an initial matter, the Court notes Plaintiff is not arguing she is entitled to attorney's fees under the "catalyst" test that was disavowed by the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Viriginia Department of Health & Human Resources*, 532 U.S. 598 (2001). Prior to *Buckhannon*, in the Eleventh Circuit a plaintiff could achieve prevailing party status, even if there was no formal adjudication in the party's favor, if his lawsuit was a significant catalyst in motivating defendants to end their unconstitutional behavior. *Taylor*, 810 F.2d at 1560. The Supreme Court in *Buckhannon* rejected this approach reasoning, "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the

necessary judicial imprimatur on the change." *Buckhannon*, 532 U.S. at 605. Rather, there must be a corresponding "judicially sanctioned change in the legal relationship of the parties." *Id.*

Here, Plaintiff's change in status was not the result of a voluntary change in behavior on behalf of Defendants. Rather, Defendants' placement of Plaintiff into the TBI/SCI Medicaid waiver program occurred solely because of the court-ordered preliminary injunction. Thus, the preliminary injunction was not one that merely maintained the status quo between the parties; it was a mandatory injunction that forced Defendants to take specific action and resulted in a judicially-sanctioned, material alteration of the legal relationship of the parties. It is clear from the Court's Order granting the preliminary injunction that injunctive relief was granted only after careful and thorough review of the merits of the case. *See* Docs. #46, 49. As Defendants averred, now that Plaintiff is enrolled she has an entitlement to the programs services, and Defendants cannot disenroll her at its discretion. Therefore, under the unusual circumstances of this case, the preliminary injunction resulted in a permanent change in the legal relationship of the parties by reason of the administrative provisions which govern the TBI/SCI Medicaid waiver program. At that point, Plaintiff had obtained the primary relief sought in her complaint by virtue of the Court's order.

Defendants cite to several cases which hold that a dismissal (with or without prejudice), if the court does not retain jurisdiction to enforce the terms of a settlement agreement, cannot confer prevailing party status on the plaintiff. However, the cases cited by Defendants are factually dissimilar from the instant case. In most of the cases cited by Defendants the plaintiff did not obtain any court-ordered relief that materially altered the legal relationship between the parties, such as a preliminary injunction granted on the

merits, as happened here. *See, e.g., Dionne v. Floormasters Enterprises, Inc.*, 647 F.3d 1109 (11th Cir. 2011) (plaintiff filed complaint to recover overtime compensation; thereafter, defendant tendered full payment to plaintiff and filed a motion to dismiss on the grounds of mootness; plaintiff's motion for attorney's fees denied because there was no judicial determination that defendants violated the FLSA); *Claiborne v. Wisdom,* 414 F.3d 715 (7th Cir. 2005) (following discovery, plaintiff voluntarily dismissed lawsuit; defendant granted attorney's fees because court's order that lawsuit be dismissed with prejudice effected a material alteration of the legal relationship between the parties and terminated plaintiff's claims); *Access for the Disabled, Inc. v. STF investments*, *LLC*, 2007 WL 2010831 (M.D. Fla. July 6, 2007) (plaintiffs sought injunctive relief under ADA; prior to attending mediation the parties settled; court did not retain jurisdiction to enforce terms of settlement agreement, incorporate by reference the terms of the settlement agreement into its order of dismissal or enter a consent decree; therefore the court never judicially altered the legal relationship of the parties and plaintiffs were not prevailing parties); *Johnson v. Pringle Development, Inc.*, No. 5:05-cv-37-Oc-10GRJ, 2006 WL 2189542 (M.D. Fla. Aug. 1, 2006) (holding there was no prevailing party and defendant was not entitled to attorney's fees where parties filed joint stipulation for dismissal with prejudice before conducting discovery or filing any substantive motions, and thus without any judicial determination on the merits).

Defendants cite *Yousuf v. Motiva Enterprises LLC*, 246 Fed. App'x. 891 (5th Cir. 2007), in support of the proposition that dismissal of the litigation following the issuance of a preliminary injunction does not render plaintiff a prevailing party. In determining plaintiff was not entitled to attorney's fees, the Fifth Circuit noted the preliminary injunction did not do anything more than temporarily preserve the status quo, and the district court

had not engaged in any consideration of the merits of the claim, "even to a minimal degree." *Id.* at 894-95. "Moreover, this is not a situation in which a court order substantially achieves a litigation goal and is thus akin to final relief." *Id.* at 895. *Yousuf* is therefore distinguishable from the instant case, where the Court carefully analyzed the merits of Plaintiff's claim and the order substantially achieved a litigation goal akin to final relief.

Finally, Defendants argue a preliminary injunction is not a decision on the merits and therefore cannot constitute a merits-based decision that would entitle Plaintiffs to attorneys fees. Defendants cite to a decision of the Third Circuit to support their argument. However, contrary to Defendants' assertion, *Singer Management Consultants v. Milgram*, 650 F.3d 223 (3rd Cir. 2011), does not stand for the proposition that a preliminary injunction can *never* be issued on the merits. Indeed, the court acknowledged that injunctive relief "can, under appropriate circumstances, render a party prevailing." *Id.* However, the court found that because temporary restraining orders and preliminary injunctions are based only on a "reasonable probability of success on the merits," parties "will not often" prevail based solely on those events. *Id.* Furthermore, Defendants' argument is directly contrary to precedent in the Eleventh Circuit that distinguishes between "status quo" preliminary injunctions and "merits-based" preliminary injunctions. *See Common Cause/Georgia*, 554

F.3d at 1356; *Taylor*, 810 F.2d at 1558.[5]  As discussed above, the preliminary injunction granted in the instant case was merits-based and did not merely maintain the status quo.

Plaintiff's entitlement to prevailing party status by virtue of the preliminary injunction is supported by case law in the Middle District of Florida and elsewhere.  In *Joyce v. Potter*, No. 5:06-cv-339-Oc-10GRJ, 2007 WL 2050955 (M.D. Fla. July 16, 2007), plaintiff brought suit against the United States Post Office following the revocation of her security clearance due to an investigation concerning the alleged rifling of a package.  The court granted plaintiff's motion for preliminary injunction and directed defendant to rescind its letter denying plaintiff's appeal of the revocation of her security clearance.  *Id.* at *5.  The court also directed defendant to hold a hearing to reconsider *de novo* the issue of revocation.  *Id.*  Before the hearing was arranged, defendant rescinded the revocation of plaintiff's security clearance, restored her security clearance, returned her to work under her contract, and assured her that the matter of the rifled package would not be a barrier to her holding a security clearance.  *Id.*  Plaintiff sought attorney's fees as a prevailing party under the Equal Access to Justice Act.  *Id.* at *4.  Defendant argued that its voluntary action mooted the cased by providing plaintiff with all of the relief requested.  *Id.* at *5.  The district court found plaintiff to be a prevailing party and awarded her attorney's fees.

---

[5] The Eleventh Circuit's approach is consistent with other circuits.  *See N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006) ("Most of our sister circuits have concluded that some preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status....We are inclined to agree. For example, the grant of a preliminary injunction should confer prevailing party status if...the party's claim a for permanent injunction is rendered moot by the impact of the preliminary injunction.); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 947-48 (D.C. Cir. 2005) (holding a preliminary injunction which results in "concrete and irreversible relief" and is based on the court's conclusion that plaintiffs were likely to prevail on the merits confers prevailing party status); *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) ("A preliminary injunction issued by a judge carries all the "judicial imprimatur" necessary to satisfy *Buckhannon.*"); *Dubuc v. Green Oak Twp.,* 312 F.3d 736, 753 (6th Cir. 2002) (internal quotations omitted) ("[T]here is only prevailing party status if the injunction represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff.").

> [T]he voluntary actions taken by the Defendant above and beyond the Court's Order do not strip the Plaintiff of her initial victory. Indeed, the very reason that the Defendant restored the Plaintiff's security clearance and returned her to work is because the Court ordered that the Defendant reconsider *de novo* its revocation of the Plaintiff's security clearance. Thus, the preliminary injunction at issue here has the "judicial imprimatur" necessary to confer prevailing party status upon the Plaintiff.

*Id.* The district court distinguished the case from *Sole v. Wyner*, 551 U.S. 74 (2007), because there had not been a final determination on the merits and the injunction was not superseded by a later ruling unfavorable to the plaintiff. *Id.*

In *ACLU of Florida v. Polk County*, No. 8:05-cv-2266-T-17TGW, 2006 WL 2147716 (M.D. Fla. July 28, 2006), plaintiffs sought injunctive relief prohibiting defendant from imposing certain application procedures and selection criteria related to citizen displays set up on government property during the holiday season. *Id.* at *1. Less than a week later, the parties filed a joint motion for entry of a stipulated order that allowed plaintiffs to erect their desired displays during the 2005 holiday season. *Id.* Following the Christmas holiday, defendant eliminated the free speech zone and the suit was dismissed with prejudice. *Id.* at *2. The district court found plaintiffs were entitled to attorneys fees as a prevailing party because the stipulated order materially changed the legal relationship of the parties by allowing Plaintiffs the relief sought, which was the ability to erect a display during the 2005 holiday season. *Id.* at *3.

> While Defendant voluntarily acquiesced to the order, the Stipulated Order is still a court-sanctioned and court-enforceable order with which Defendant had a duty to comply. The creation of this duty to the court thus changes the legal relationship of the parties. Further, the Stipulated Order provided temporary injunctive relief to Plaintiffs which significantly altered the status quo. As a direct result of this order, Plaintiffs were able to

15

> erect displays on Defendant [sic] property without meeting the requirements of Defendant's policy. Thus, Plaintiffs are a prevailing party pursuant to § 1988(b) because Plaintiffs obtained the primary relief they sought...

*Id.*

The Southern District of Florida found attorney's fees were warranted by virtue of a preliminary injunction under facts similar to the instant case, albeit under a different fee-shifting statute. In *Sabina v. American General Life Insurance Co.*, 856 F.Supp. 651 (S.D. Fla. 1992), an action brought under ERISA, the district court granted a preliminary injunction restraining defendants from terminating group health insurance coverage for the plaintiff. *Id.* at 653. Six days later, the parties had settled and defendants agreed to provide health care coverage for the requested time period. *Id.* The court found that plaintiffs' filing of the lawsuit resulted in the imposition of a preliminary injunction, which caused settlement favorable to plaintiffs and allowed plaintiffs to receive all of what they sought to recover. *Id.* at 656. Therefore, the court found plaintiffs were entitled to attorney's fees under the ERISA statute.

The undersigned finds the aforementioned cases to be more persuasive than those cited by Defendants. Accordingly, by virtue of the preliminary injunction which was decided on the merits and resulted in a "judicially sanctioned change in the legal relationship of the parties," Plaintiff is a prevailing party and entitled to reasonable attorney's fees. *Buckhannon*, 532 U.S. at 605; *see also Common Cause/Georgia*, 554 F.3d at 1356; *Taylor*, 810 F.2d at 1558.

## B. Whether the requested time, hourly rates, and expenses are reasonable

In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), the court set out twelve factors to be considered in determining the reasonableness of

attorney's fees: (1) the time and labored required; (2) the novelty and difficulty of the question involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases.[6] *Id.* at 717-19.

Generally, a district court begins its calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 436, 433 (1983). The resulting number is called the "lodestar" amount. *City of Riverside v. Rivera,* 477 U.S. 561, 568 (1986). To calculate a reasonable hourly rate, the court uses the prevailing market value "in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999). In determining the appropriate number of hours to be included in a lodestar calculation, the district court must exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434. The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rates requested. *Id.* at 433. "Objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." *American Civil Liberties Union*, 168 F.3d at 428 (internal quotations omitted).

---

[6] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

In the instant case, Plaintiff seeks compensation in the amount of $83,034.66. This figure is based on the following: Attorney Stephen Gold billed 100.24 hours at $525 per hour, for a total amount of $52,626.[7] Attorney Jay Howanitz billed 95.1 hours at $300 per hour, for a total amount of $28,530.[8] Litigation expenses totaled $1,878.66.

Defendants object to 81.17 hours billed by Attorney Gold and 72.15 hours billed by Attorney Howanitz. Defendants assert a seventy-seven percent across-the-board reduction in Plaintiff's claimed hours is warranted. Thus, based on a rate of $275 per hour for 45.41 hours, Defendants contend Plaintiff's fee award, if any, should be $12,487.75.

Mr. Howard Coker submitted a declaration in support of Plaintiff's motion for attorney's fees and provided his opinion that the rates requested and hours expended were reasonable in light of the complex and novel issues presented in the case. (Doc. #74-7). Mr. Coker is the president and founding partner of the law firm Coker, Schickel, Sorenson & Posgay, P.A. in Jacksonville, Florida, and has been practicing law in Florida since 1972. *Id.* at 1. Mr. Coker averred he is familiar with billing rates for attorneys practicing in the Middle District of Florida. *Id.* at 2. Mr. Coker averred the rates requested are consistent with the hourly rates charged in the Jacksonville legal market for litigators of comparable background, skills, and experience, and were arguably below what lawyers in Jacksonville would charge for similar work. *Id.* at 4. Mr. Coker averred the amount of time spent by Plaintiff's counsel in the matter was reasonable, "particularly given the fact that it was a matter of first impression in this District, the amount of issues raised in

---

[7] Stephen Gold has practiced law for nearly 40 years and has extensive experience in federal litigation and disabilities law. His practice is based in Philadelphia, Pennsylvania.

[8] Jay Howanitz has been practicing law for nearly 6 years and is a partner with the law firm of Spohrer & Dodd, P.L., located in Jacksonville, Florida.

Defendants' various Motions to Dismiss and the consequences that were at stake for Ms. Haddad." *Id.*

Mr. Mark Alexander also submitted a declaration in support of Plaintiff's motion. (Doc. #74-8). Mr. Alexander has been practicing in Florida for almost twenty-seven years. Id. at 1. He was an associate attorney and subsequently a partner at Holland & Knight for twenty-one years, and is currently a founding partner of Alexander DeGance Barnett, P.A. *Id.* at 2. Mr. Alexander provided his opinion that Attorney Gold's billing rate was reasonable in light of his background and experience. *Id.* at 3. Mr. Alexander was of the opinion that a reasonable hourly rate based on Attorney Howanitz's experience was $275. *Id.* at 4. Mr. Alexander found that the hours expended were also reasonable. Mr. Alexander noted the case "presents novel and difficult questions, both in light of the law and in the context of Plaintiff's medical circumstances. The case required skill and experience in a relatively difficult and unusual case." *Id.* Mr. Alexander also noted the result obtained was excellent and beneficial to Plaintiff. *Id.* "The time limitations imposed by the circumstances, along with the results obtained, are significant factors that bear on my opinion of reasonable hours and reasonable rates in this particular case." *Id.* at 5.

### i. The hourly rates requested

Defendants argue that the proposed hourly rates are excessive of rates actually billed and paid in similar lawsuits, and avers Plaintiff's counsels' rates should be reduced to a blended rate of no more than $275 per hour. Defendants cite to several cases where the courts found reasonable rates in ADA cases to be $200-$300. However, as Plaintiff contends, those cases involved typical ADA barrier-removal claims or default judgments, and do not reflect the complex litigation involved in the instant case, which was heavily contested and involved matters of first impression. *See, e.g., Access for the Disabled v.*

*Osceola Enterprises of Kissimee, Inc.*, No. 6:09-cv-1805-Orl-31GJK, 2010 WL 2889876, at *6 (M.D. Fla. July 1, 2010) (barriers-to-access case with a default judgment; $300 hourly rate awarded); *Raetano v. Burzynski*, No. 8:08-cv-200-T-17EAJ, 2009 WL 691921, at *2 (M.D. Fla. March 13, 2009) (finding the case did not present circumstances "above and beyond the typical Title III ADA case" and awarding $300 hourly rate); *U.S. E.E.O.C. v. DMK of JAX, Inc.*, No. 3:07-cv-920-16HTS, 2008 WL 5191586, at *3-4 (M.D. Fla. Dec. 10, 2008) (default judgment; $250 hourly rate requested and awarded with no analysis); *Weil v. Vescovi*, No. 6:05-cv-319-Orl-22KRS, 2007 WL 2827697, at *4 (M.D. Fla. Sept. 27, 2007) (default judgment; $225 hourly rate awarded); *Lamb v. Lee County*, No. 2:05-cv-246-FtM-99SPC, 2007 WL 704944, at *2 (M.D. Fla. March 2, 2007) (barriers-to-access case; hourly rates of $200 and $225 found reasonable); *Long v. Countryside Point, Inc.*, No. 8:06-cv-842-T-17MAP, 2007 WL 433467, at *1 (M.D. Fla. Feb. 8, 2007) (barriers-to-access case; $250 hourly rate requested and awarded with no opposition); *Access for the Disabled v. Missouri Mart*, No. 8:05-cv-392-T-23MSS, 2006 WL 5432711 (M.D. Fla. Dec. 7, 2006) (barriers-to-access case; $250 hourly rate awarded).  A reasonable rate is "the rate charged by attorneys with similar skills in *similar cases*." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999) (emphasis added).  Other than that they were brought under the ADA, the cases cited by Defendants are not sufficiently similar to the instant case to warrant reduction of the rates requested.

Defendants also argue that Attorney Gold's hours do not reflect a reasonable hourly rate necessary to secure competent counsel in the Middle District of Florida in an ADA case.  Defendants argue the rates requested are in excess of local rates in the Middle District for local competent attorneys willing and able to handle Plaintiff's ADA claims.

The undersigned finds this assertion to be at odds with the declarations submitted by Plaintiff, as well as information presented at oral argument.  Mr. Alexander and Mr. Coker both averred that rates are typically higher in complex civil litigation, particularly where the litigation involves novel or difficult legal issues, and that the rates requested in the instant case were reasonable.  In his declaration, Mr. Alexander stated he is not aware of another lawyer in North Florida with the same extensive knowledge and experience in this kind of case as Attorney Gold.  "Although there are other excellent lawyers in North Florida who could have effectively handled the instant case on behalf of the Plaintiff, I would expect those lawyers to spend significantly more hours on the case in order to research and understand the relevant law and to effectively represent the Plaintiff."  (Doc. # 77-8 at 4).  Mr. Coker noted, "Indeed, [the rates requested] are arguably below what comparably skilled and accomplished lawyers in this legal market would charge for similar work on a challenging case that raised questions of first impression."  At oral argument, Plaintiff's counsel also averred Plaintiff was unable to find a local lawyer willing to take her case, despite utilizing the help of the Jacksonville Independent Living Center.

As such, the undersigned finds that the rates requested are reasonable under the factors elucidated in *Johnson*.  This litigation involved novel and difficult issues of first impression.  Counsel obtained successful results for Plaintiff despite vigorous opposition from Defendants and significant time constraints.  The fee was necessarily contingent, as opposed to fixed, because Plaintiff's counsel confirmed at oral argument that he would only be compensated if Plaintiff prevailed and was awarded fees under the applicable fee-shifting statute.[9]  As averred by Mr. Alexander and Mr. Coker, an attorney's skill,

---

[9] As mentioned previously, Plaintiff's income is limited to her Social Security Disability Insurance,
(continued...)

experience and reputation are particularly important in complex civil litigation. Although Plaintiff utilized a non-local attorney, it appears she was justified due to a lack of available or experienced counsel in the local market. Furthermore, the rates requested by Attorney Gold and Attorney Howanitz are not unreasonable based on the prevailing market value in the Middle District of Florida for similar services by lawyers of comparable skills, experience, and reputation.

### ii. The hours and time expended

At oral argument, Defendants argued for the first time that Plaintiff failed to attach time sheets to the motion for attorney's fees and thus lack the requisite supporting documentation. Plaintiff responded that the failure to attach the time sheets was a clerical error and Defendants were in possession of copies of Plaintiff's time sheets before the motion was filed. Defendants acknowledged possession of counsels' time sheets. Moreover, attached to Defendants' response in opposition to Plaintiff's motion for attorney's fees was a spreadsheet of Plaintiff's counsels' hours, which included the date, attorney, description of task performed, hours expended, hours objected to by Defendants, and an explanation of Defendants' objections. (Docs. # 76-10, 76-11). Attached to Plaintiff's reply was a similar spreadsheet with an additional column for Plaintiff's response to Defendants' objections. (Docs. #80-1, #80-2). Therefore, although Plaintiff's motion for attorney's fees failed to include the requisite documentary evidence, such evidence was eventually provided to the Court through subsequent responsive filings. The undersigned finds this evidence sufficient to determine the reasonable number of hours spent on the litigation.

---

[9](...continued)
and she is eligible for, and receives, Medicare and Medicaid.

Based on concessions made by Plaintiff in response to Defendants' objections and the undersigned's independent review of the record, Plaintiff currently requests compensation for 100.24 hours for Attorney Gold, to which Defendants object to 77.3 hours. Plaintiff requests compensation for 72.8 hours for Attorney Howanitz, to which Defendants object to 49.55 hours. In sum, Plaintiff seeks compensation for 173.04 hours and Defendants object to 126.85 of these hours, leaving 46.19 uncontested hours.

Defendants argue Plaintiff improperly claimed hours related to another litigation, *Jones v. Arnold*, No. 3:09-cv-1170-J-34JRK (M.D. Fla.). *Jones* is a similar case wherein plaintiff Jones sought a preliminary injunction to force Defendants to provide services through the TBI-SCI Waiver program. (No. 3:09-cv-1170-J-34JRK, Doc. #1). Jones moved for class certification on January 6, 2010. (Doc. #28). Thereafter, Defendants voluntarily provided services to Jones, and the Court found Jones' motion for preliminary injunction was moot on February 23, 2010. (Doc. #48). Plaintiff attempted to intervene in *Jones* by filing a motion for preliminary injunction on April 15, 2010. (Doc. #52). The court denied Plaintiff's motion on May 7, 2010. "As an unnamed 'class member' in an uncertified class, Haddad is not a party to this case and lacks standing to see the relief requested..." (Doc. #62 at 2). Plaintiff then filed a complaint on May 13, 2010, initiating the instant case.

Defendants specifically object to 24.77 hours of Attorney Gold and 32.60 hours of Attorney Howanitz as related to the *Jones* matter. In sum, Defendants object to all of counsels' hours billed prior to the filing of the complaint in the instant case. Defendants argue, because the complaint was not filed in this litigation until May 13, 2010, all claimed hours prior to that date relate to the *Jones* case. Plaintiff conceded in her reply to Defendants' objections that 21.1 hours claimed by Attorney Howanitz pertained to the *Jones* matter. As to the rest of the objected hours, Plaintiff argues that all legal work

23

completed prior to the filing of the complaint would have had to be done for the instant action regardless of *Jones* and was not duplicated.

The undersigned is persuaded that the hours billed by Plaintiff's counsel are compensable and relate to the instant litigation. The contested hours involve the initial client meeting, researching and drafting the complaint, researching and drafting the motion for preliminary injunction, drafting Plaintiff's declaration, conferring with opposing counsel, and securing and drafting expert witness declarations. Expenses incurred in case preparation are recoverable aspects of attorney's fees. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). This litigation could not have been initiated without the drafting of a complaint and the motion for preliminary injunction, so the hours billed for these activities are certainly related to the instant litigation. Moreover, the total hours devoted to the pre-filing activities, 24.77 hours for Attorney Gold and 11.2 hours for Attorney Howanitz, are not excessive or unreasonable.

Defendants also argue that the hours claimed are excessive in light of the fact that the complaint and motion for preliminary injunction are "form filings," which borrow heavily from complaints filed in other cases previously filed by Plaintiff's attorneys. The undersigned finds this argument to be unpersuasive. In addition to the *Jones* matter, Plaintiff's counsel filed complaints alleging similar violations of the ADA on behalf of plaintiffs in two cases before the district court in the Southern District of Florida. However, both of these complaints were filed after the instant litigation was initiated. *See Luis Cruz and Nigel De la Torre v. Arnold*, No. 3:10-cv-725-UATC-JBT, complaint filed August 18, 2010 in the Middle District of Florida, and *Robledo, et al., v. Dudek et. al*, No. 1:11-cv-21997-AJ, complaint filed June 23, 2011 in the Southern District of Florida. Therefore, it can hardly be said that Plaintiff's counsel utilized "form filings" in the instant litigation, which

presented complex and novel issues of first impression in this district. Furthermore, as discussed above, the time billed for the drafting of the complaint and the motion for preliminary injunction was neither excessive nor unreasonable.

Finally, Defendants argue block billing appears frequently in Attorney Gold's time slips, which warrants reduction in his request for fees. Block billing is the practice of grouping multiple tasks in a block summary under a single time entry. Defendants do not identify which time entries reflect improper block billing, however, and the undersigned does not find block billing to be prevalent throughout Attorney Gold's time slips. While there are instances where Attorney Gold listed more than one task, the tasks seemed to be intertwined or sufficiently related to one another to warrant summary in a single time entry. For example, Attorney Gold claimed 4.99 hours on June 14, 2010 with the description "Read over all briefs, Fisher and Ormond, declaration and prep for oral argument." (Doc. #80-1 at 9). Defendants objected to the time entry as "excessive time, insufficient detail, no showing of necessity." *Id.* Plaintiff responded this time was spent preparing for oral argument, which is "both necessary and essential for good lawyering. There were numerous briefs, affidavits, declarations, and cases that were reviewed to present the strongest argument possible." *Id.* In another example, Attorney Gold claimed 1.89 hours on June 24, 2010 for "Telephone call to Ms. Haddad, case manager McFachern at hospital, who had tel me either last night at 7 pm or today at 7 am re extending hospital stay, several TC and email to DOJ. Then TC from Jay re Defs' req and two more TC to case manager and Ms. Haddad." (Doc. #80-1 at 11). Defendants objected to the entry as "excessive time, insufficient detail, no showing of necessity." *Id.* Plaintiff responded that it was necessary for counsel to telephone Plaintiff and inform her the preliminary injunction was granted. *Id.* It was also necessary to inform the hospital and coordinate

Plaintiff's discharge. *Id.* Although the entry reflects several different telephone conferences with different individuals, it appears all of the tasks related to informing relevant persons of the Court's granting of the preliminary injunction and coordinating Plaintiff's discharge from the hospital to start home-based services. All of these tasks were accomplished in less than two hours, and the undersigned finds the entry provides sufficient information to determine whether the requested time is reasonable.

There is one instance where Attorney Gold's time slips arguably contains block billing for which the Court is unable "to calculate with any precision the number of hours an attorney devoted to a particular task." *ACLU of Ga. v. Barnes*, 168 F.3d at 429. On June 2, 2010, Attorney Gold claimed 2.34 hours with the description "Went through Jones file to figure out what relevant to Haddad PI, organized Haddad file, scan docs, TC with son." (Doc. #80-1 at 7). The organization and selection of files to be scanned are reasonably related so as to warrant grouping under one time entry. However, the telephone conference with Plaintiff's son is a distinct task, and it is unclear from the entry how much time was devoted to this task as opposed to the others. Therefore, the undersigned finds 1.34 hours should be deducted from Attorney Gold's claimed hours.

The undersigned has considered the requested hours both in the aggregate and on a line-by-line basis. The undersigned finds that the hours listed below represent a reasonable number of hours to expend on a case such as this, which presented novel and complex issues within the difficult context of Plaintiff's medical circumstances and significant time limitations. Despite Defendants' vigorous opposition, Plaintiff's counsel secured a beneficial result and Plaintiff obtained the relief sought. Accordingly, the undersigned finds that all but 1.34 hours claimed by Attorney Gold are reasonable, for a total of 98.9 reasonable hours. After accounting for the concessions made by Plaintiff with

regards to improperly billed tasks related to the *Jones* matter, 72.8 hours claimed by Attorney Howanitz are reasonable.

### iii. Litigation costs

"[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under Section 1988....[T]he standard of reasonableness is to be given a liberal interpretation." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). In *Dowdell*, the Eleventh Circuit found that travel, telephone and postage expenses are not unusual and are compensable.

Defendants argue Plaintiff's travel expenses should be disallowed and cites to several ADA cases in the Middle District which held travel expenses are not recoverable. *See Demers v. Adams Homes of Northwest Florida, Inc.*, No. 6:06-cv-1235-Orl-31KRS, 2008 WL 2413934, at *2 (M.D. Fla. June 11, 2008) (finding attorney's travel time was not compensable); *Lamb v. Lee County*, No. 2:05-cv-246-FtM-99SPC, 2007 WL 704944, at *2 (M.D. Fla. March 2, 2007) ("[T]he Court is not inclined to award fees for traveling because plaintiffs chose counsel outside of the area."); *Brother v. International Beach Club Condominium Ass'n*, No. 6:03-cv-444-Orl-28DAB, 2005 WL 1027240, at *5 (M.D. Fla. April 28, 2005) ("Travel time is not properly visited on one's adversary, absent a showing of a lack of qualified local counsel. Such a showing has not been made here."). In *Demers*, the Plaintiff's success was limited and the court found she had "clearly over-litigated this case, and sought damages well beyond those supported by the evidence presented." *Demers*, 2008 WL 2413934, at *3. *Lamb* involved a "barriers to access" violation with standardized pleadings, and minimal requisite time, labor, skill and level of difficulty. *Lamb*, 2007 WL

704944, at *2. *Brother* was also a typical "barriers to access" case that involved "no showing of novelty or preclusion of other work." *Brother*, 2005 WL 1027240, at *5.

These cases are clearly distinguishable from the instant case, and the undersigned finds Defendants' argument to be unpersuasive. "[T]he exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel." *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir. 1983). As previously discussed, it was not unreasonable for Plaintiff to hire out-of-town counsel in the instant case due to the lack of qualified local counsel. "Civil rights litigants may not be charged with selecting the nearest and cheapest attorney." *Dowdell*, 698 F.2d at 1192; *Johnson*, 706 F.2d at 1208. Accordingly, Attorney Gold's expenses related to travel should be allowed.

## C. Whether Plaintiff failed to request services before bringing suit

Defendants argue Plaintiff's request for attorney's fees should be reduced by an across-the-board reduction of seventy-seven percent because Plaintiff failed to show she sought Defendants voluntary compliance before bringing suit.

The undersigned finds Defendants' argument to be without merit. Plaintiff applied to receive services under Defendants' TBI/SCI Waiver program in November 2007, and was placed on the waiting list where she remained until the Court granted injunctive relief. On January 8, 2010, Defendants acknowledged Plaintiff was on the waiting list but explained they did not have funds available or openings to serve additional individuals. Plaintiff contacted Defendants in early March 2010 to notify them of the change in her circumstances and that she desperately required in-home services. Defendants informed Plaintiff in April 2010 that there were no funds available for in-home services, but if she moved into a nursing home, after sixty days she would be eligible to receive in-home

services through the Florida Nursing Home Transition Plan (the "Transition Plan"). At oral argument, Plaintiff's counsel averred, and Defendants did not dispute, that Plaintiff requested services three times via telephone and also directly of Defendants' counsel. Clearly, Plaintiff sought Defendants' voluntary compliance prior to filing suit. Furthermore, the Eleventh Circuit has stressed "pre-suit notice is not required to commence suit under the ADA and that the lack of pre-suit notice does not compel a reduction of the requested fee award." *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1360 (11th Cir. 2006). Accordingly, Plaintiff's attorney's fees should not be reduced on this basis.

### III. Conclusion

Based on the foregoing, it is hereby **RECOMMENDED**:

1.      Plaintiff's Motion for Attorney's Fees and Litigation Expenses (Doc. #74) be **GRANTED** in part.

2.      Plaintiff should be awarded attorney's fees in the amount of $75,641.16, based upon:

    a.      98.9 hours claimed for Attorney Stephen Gold at $525 per hour, totaling $51,922.50; and

    b.      72.8 hours claimed for Attorney Jay Howanitz at $300 per hour, totaling $21,840.00.

    c.      Litigation costs totaling $1,878.66.

**DONE AND ENTERED** at Jacksonville, Florida this 20th day of October, 2011.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to: All Counsel of Record
The Honorable Marcia Morales Howard